# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **ANA DAVIS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-23-CV-00046-KC** |
| | § | |
| **SUPREME LABOR SOURCE, LLC** | § | |
| *d/b/a Clark Contracting, LLC, d/b/a Servpro* | § | |
| *of Douglas County, d/b/a Servpro Industries* | § | |
| *Inc.*, ***and* WYOMING NATIONAL** | § | |
| **LOGISTICS,** | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION

Presently before the Court is Defendant Supreme Labor Source, LLC's "Motion to Dismiss First Amended Complaint" (ECF No. 17) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Honorable District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the Court recommends that the motion be granted in part and denied in part.

## I.   BACKGROUND[1]

Plaintiff Ana Davis is an African American female.[2] Defendant Supreme Labor Source, LLC is a staffing agency, and Defendant Wyoming National is an entity that provides shelter care, mobile laundry, base camp operations, debris removal, and equipment rentals.[3] Supreme

---

[1] The facts recounted in this section are derived from Davis's First Amended Complaint and are accepted as true on this procedural posture. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[2] First Am. Compl. at ¶ 12, ECF No. 9.

[3] *Id.* at ¶¶ 3–4.

Labor and Wyoming National (collectively, Defendants) are entities that provide staffing and/or operational services to an immigration shelter for unaccompanied migrant children located at Fort Bliss in and around El Paso, Texas.[4]  Davis was hired to work at the shelter.[5]  On or about October 19, 2021, Davis was demoted to a youth care worker position, and ultimately, Defendants terminated her employment on or about October 31, 2021.[6]

On November 15, 2022, Davis brought this lawsuit against Defendants in the 327th Judicial District Court, El Paso County, Texas, in Cause No. 2022-DCV-3436, alleging their violations of the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981.  She asserts claims for race and sex (gender) discrimination, hostile work environment sexual harassment, and retaliation.  On February 3, 2022, Wyoming National, with consent of Supreme Labor, removed this case to federal court.[7]

Upon removal, on February 10, 2023, Wyoming National filed a motion to dismiss (ECF No. 7) Davis's state court petition on the grounds that it was not her employer.  While that motion to dismiss was pending, Davis filed her First Amended Complaint (ECF No. 9) as a matter of course on February 24, 2023.  *See* Fed. R. Civ. P. 15(a)(1)(B).  On February 27, 2023, Judge Cardone denied as moot Wyoming National's motion to dismiss in view of Davis's First Amended Complaint.[8]  Thereafter, on March 10, 2023, Wyoming National filed a second motion

---

[4] *Id.* at ¶¶  5, 7.

[5] *Id.* at ¶  13.

[6] *Id.* at ¶ 18.

[7] Notice of Removal at 1, ECF No. 1.

[8] Order at 2, ECF No. 10.

to dismiss (ECF No. 12), this time, seeking dismissal of Davis's First Amended Complaint but on the same grounds as before.

A few days later, on March 27, 2023, Supreme Labor filed the instant motion to dismiss Davis's First Amended Complaint.  Def. Supreme Labor's Mot. to Dismiss First Am. Compl. [hereinafter, Def. Supreme Labor's Mot. to Dismiss], ECF No. 17.  On April 10, 2023, Davis filed a response to the motion, Pl.'s Resp. & Opp'n to Def. Supreme Labor Source LLC's Mot. to Dismiss First Am. Compl. [hereinafter, Pl.'s Resp. to Supreme Labor's Mot. to Dismiss], ECF No. 20, and on April 17, 2023, Supreme Labor followed by filing a reply, Def. Supreme Labor's Reply in Supp. of Its Mot. to Dismiss Pl.'s First Am. Compl. [hereinafter, Def. Supreme Labor's Reply], ECF No. 24.  On August 29, 2023, Judge Cardone referred the instant motion to the undersigned Magistrate Judge.  *See* Text Order (Aug. 29, 2023).

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion, a court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Doe* ex rel*. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d

849, 854 (5th Cir. 2012) (*en banc*) (citation and internal quotation marks omitted).  "In other words, we look to see whether [the plaintiff's] pleadings, including her legal arguments, plausibly state a claim."  *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012).

"Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotes and citations omitted).

### III.   DISCUSSION

Supreme Labor asks the Court to dismiss Davis's First Amended Complaint on the grounds that the complaint fails to (1) allege facts to establish administrative exhaustion and (2) plead sufficient facts to state a claim for relief.  Before addressing these grounds for dismissal, the Court addresses a preliminary matter—whether Supreme Labor's motion to dismiss should be dismissed as untimely—an issue raised by the parties' arguments.

### A.  The timeliness of Supreme Labor's Motion to Dismiss

On the timeliness issue, several procedural rules converged in this case.  Generally, a defendant must serve a responsive pleading or an answer within 21 days after being served with the summons and complaint.  Fed. R. Civ. P. 12(a)(1).  In removed cases, a defendant who did not answer before removal must answer or present other defenses within the longest of the following periods: "21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief"; "21 days after being served with the summons for an initial pleading on file at the time of service;" or "7 days after the notice of removal is filed."  *Id.*

81(c)(2)(A)–(C).  Further, Federal Rule of Civil Procedure 15 permits a party to amend its pleading "as a matter of course" within "21 days after service of a motion under Rule 12(b)" if the pleading is one to which a responsive pleading is required, *id.* 15(a)(1)(B), and if a party so amends, "any required response to [the] amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later," *id.* 15(a)(3).

Davis points out, and Supreme Labor does not dispute, that Supreme Labor was served with her state court petition on February 14, 2023—four days after Wyoming National removed the case to this Court on February 10, 2023.  Pl.'s Resp. to Supreme Labor's Mot. to Dismiss at 2.  So, pursuant to Rule 81(c), Supreme Labor's answer or responsive pleading was due by March 7, 2023.  In the meantime, in response to Wyoming National's first Rule 12(b)(6) motion to dismiss (ECF No. 7),[9]  Davis, on February 24, 2023, filed, pursuant to Rule 15(a)(1)(B), her First Amended Complaint, which is the subject of Supreme Labor's instant motion; the First Amended Complaint superseded Davis's state court petition.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect.").  Consequently, and by operation of Rule 15(a)(3), an answer or a responsive pleading by Supreme became due by March 10, 2023.  Supreme Labor filed the instant motion to dismiss on March 27, 2023—seventeen days later.  Its motion is untimely.

---

[9] Federal Rule of Civil Procedure 12(a)(4) does not toll the time for Supreme Labor to serve a responsive pleading or an answer on the account of Wyoming National's motion to dismiss.  *See Posey v. Pruger*, No. 10 C 3574, 2015 WL 5610764, at *4 (N.D. Ill. Sept. 22, 2015) ("In a multi-defendant case, the filing of a Rule 12(b) motion by one defendant does not necessarily toll the answer period for other defendants who have not joined the motion." (citing, among others, *Hanley v. Volpe*, 48 F.R.D. 387, 387–88 (E.D. Wis. 1970))); *see also* 5B Charles Wright & Arthur Miller, *Fed. Practice & Procedure* § 1346 (3d ed.) ("[T]he filing of a Rule 12(b) motion by one defendant does not automatically extend the period within which a codefendant may answer.").

Supreme Labor argues however that its motion is not untimely because Davis's counsel agreed to extensions of time.  Def. Supreme Labor's Mot. to Dismiss at 2.  On March 9, 2023, Supreme Labor's counsel emailed Davis's counsel, asking if the latter would be "agreeable to a two-week extension, extending the deadline to March 24, for our client to file an *answer*."  Pl.'s Resp. to Supreme Labor's Mot. to Dismiss Ex. A, at 3 (emphasis added), ECF No. 20-1.  In response, on March 13, 2023, Davis's counsel wrote: "I have no issue with your requested extension."  *Id.* at 2.  On March 24, 2023 (a Friday), Supreme Labor's counsel emailed Davis's counsel stating: "We anticipated filing our *response* to the Complaint today but need one additional day to finalize it.  We will file it on Monday [*i.e.*, March 27].  Please let us know if you have an objection to this."  *Id.* Ex. B, at 2 (emphasis added), ECF No. 20-1.  In response, Davis's counsel wrote: "Not a problem."  *Id.* Ex. B, at 1.

Davis counters that she agreed to an extension of time to "file an answer" and not a motion to dismiss.  Pl.'s Resp. to Supreme Labor's Mot. to Dismiss at 4.  Therefore, she argues, Supreme Labor's motion to dismiss is untimely and should be denied.  *Id.* at 5.  Pointing out that in her March 24, 2023 email, Supreme Labor's counsel requested extension to file a "response," Supreme Labor contends that Davis's counsel agreed to an extension to file "this responsive pleading."  Def. Supreme Labor's Mot. to Dismiss at 2, 4.  Therefore, Supreme Labor continues, its motion to dismiss is timely.  In the alternative, Supreme Labor points out that under Federal Rule of Civil Procedure 6(b), district courts have broad discretion to extend filing deadlines, *id.* at 3, and says that even if the Court considers its motion to be untimely, it should not exclude its motion because there is "good cause" for the untimeliness, *id.* at 2, 4.

Rule 6(b)(1) allows a district court to extend the time within which an act must be done for "good cause," but expressly distinguishes between extensions of time made before its

expiration, which the court can make with or without motion or notice, and extensions of time made after its expiration, which the court can make only on motion.  Fed. R. Civ. P. 6(b)(1)(A)–(B).  Further, a court may only extend the time for filings after a deadline has expired if the party failed to act because of "excusable neglect."[10]  *Id*.

The difficulty with Supreme Labor's argument is that although an agreement by the parties or their counsel to extend the deadline for a defendant to file a responsive pleading or an answer may operate as "a waiver of the right to object to the delay during the agreed[-]to period," 5B *Fed. Practice & Procedure*, *supra*, § 1345 (3d ed.), the agreed-upon deadline is ineffective—without approval by the court.  *E.g.*, *EEOC v. Mothers Work, Inc.*, No. CIV.A.SA04CA0873-XR, 2005 WL 465400, at *1 (W.D. Tex. Feb. 28, 2005) ("Parties may not agree to extend the deadline for a defendant to file its answer without approval by the Court pursuant to [Rule] 6(b)."); *accord DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1110 (D. Minn. 2010); *see also Segars v. Hagerman*, 99 F.R.D. 274, 276 (N.D. Miss. 1983) ("At bottom, it matters little whether plaintiff's counsel agreed to an extension of thirty days or three hundred; the time within which to file an answer is fixed by [Rule] 12(a) and cannot be enlarged except by court order.").[11]  Prior to filing the instant motion to dismiss,

---

[10] "'[E]xcusable neglect' under Rule 6(b) is a somewhat elastic concept."  *DaSilva v. USCIS*, 599 F. App'x 535, 544 (5th Cir. 2014) (cleaned up).  Determining what sorts of neglect will be considered "excusable" under Rule 6(b)(2), "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith."  *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 525 (5th Cir. 2021) (internal quotes omitted).

[11] As "[o]ne court succinctly explained the reason for this procedural requirement as follows: 'Professional comity having the effect of lengthening lawsuits cannot be allowed to interfere with the overall purpose of the Rules, namely the just, speedy, and inexpensive determination of actions.'"  *Stone v. City of Mobile*, No. 06-0441-WS-C, 2007 WL 505057, at *2 (S.D. Ala. Feb. 13, 2007) (quoting *Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp .2d 993, 995 (D. Neb. 1998)); *see also* 4B *Fed. Practice & Procedure*, *supra*, § 1165 (4th ed.) ("A stipulation by the parties for an extension of time is ineffective if it is not also embodied in an order of the district court.  This limitation on party autonomy means that the

Supreme Labor did not file a Rule 6(b) motion seeking extension of time to file its answer or a motion to dismiss—much less one such motion based on the parties' agreement.  It was certainly an ill-advised move on Supreme Labor's part.

Nonetheless, the Court construes Supreme Labor's timeliness arguments as a motion for a retroactive extension of time under Rule 6(b)(1)(B) and grants the motion so construed.[12] Along with its reply brief, Supreme Labor submitted a declaration executed under penalty of perjury under the laws by an attorney representing Supreme Labor.  According to the declaration, at the time Supreme Labor initially requested Davis's counsel to extend the time to file an "answer," Supreme Labor's legal team had not determined whether they would file an answer or a motion to dismiss.  Def. Supreme Labor's Reply Ex. A [hereinafter, Vanhooser Decl.], at ¶ 3, ECF No. 24-1.  It appears that the legal team made the determination to file a motion to dismiss, instead of an answer, by the time they requested the second extension—this time, for filing a "response."  Def. Supreme Labor's Reply 2.  The declaration further states, and the email records submitted by Davis corroborate, that at no point did Davis's counsel state or indicate that she would not grant an extension to file a motion to dismiss or would only grant an extension to file

---

court, which is responsible for the condition of its docket and for the speed with which it administers justice, is able to exercise full control over extensions of time, and thereby insure a proper flow of judicial business and an effective use of the court's resources." (footnotes omitted)).

[12] *See* Local Rule, App. C, Rule 1(d)(2) (W.D. Tex.) ("A magistrate judge may determine any preliminary matters . . . arising in the exercise of the authority conferred by this subsection[,]" *i.e.*, Rule 1(d), which addresses a district judge's referral of a case-dispositive motion to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)); *Tucker v. U.S. Dep't of Army*, 56 F.3d 1384, 1995 WL 337670, at *2 (5th Cir. May 16, 1995) (unpublished table decision, though precedential under Fifth Cir. R. App. P. 47.5.3, which provides, "[u]npublished opinions issued before January 1, 1996, are precedent") ("[U]nder the plain language of both 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil Procedure, [a] magistrate judge ha[s] authority to grant [a] defendant's motion to extend time [in which to file an answer] (which is a nondispositive motion)." (footnote omitted)); *accord Fletcher v. United States*, 452 F. App'x 547, 553 (5th Cir. 2011).

an answer.  Vanhooser Decl. at ¶ 5.  The Court therefore is unable to find that Supreme Labor acted in bad faith in filing the instant motion late.

Further, Supreme Labor adds that had Davis's counsel not agreed to either of these requests for extension, it would have moved the Court for an extension.  Def. Supreme Labor's Reply 2.  To be sure, had Supreme Labor moved the Court for an extension of time to file an "answer" without any mention of a motion to dismiss, the Court's order granting such a motion would have automatically included permission to file a motion to dismiss in lieu of the answer, absent any express language or order to the contrary.[13]  Moreover, Supreme Labor was late by, at most, seventeen days when it filed the instant motion to dismiss, so any prejudice from the delay was at most *de minimis*.  Therefore, under the circumstances, the Court finds that there is good cause for Supreme Labor's delay and the delay is excusable.

## B.  Administrative Exhaustion

Supreme Labor argues that the First Amended Complaint should be dismissed because it fails to "establish" administrative exhaustion.  Def. Supreme Labor's Mot. to Dismiss at 10.  Specifically, it points out that the complaint lacks any allegations related to whether the EEOC issued a right-to-sue letter, and therefore, that it does not enable the Court to determine whether such a letter was issued "regarding Supreme Labor," whether this action was timely filed, or whether any initial EEOC charge covers all the allegations in the complaint.  *See id.* at 10–11.

---

[13] *See* 4B *Fed. Practice & Procedure*, *supra*, § 1165 (4th ed.) ("[I]f the time for filing an answer or other pleading . . . is extended under Rule 6(b), the extension of pleading time will similarly extend the time to file any preliminary motion authorized by the rules (such as a pre-answer motion under Rule 12), absent a judicial direction to the contrary." (footnotes omitted)).

Employment discrimination plaintiffs must exhaust administrative remedies before bringing suit under Title VII.[14] *Price v. Choctaw Glove & Safety Co*., 459 F.3d 595, 598 (5th Cir. 2006).  To exhaust, a Title VII plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue.  *Ernst v. Methodist Hosp. Sys*., 1 F.4th 333, 337 (5th Cir. 2021).  The plaintiff must file a charge with the EEOC either 180 or 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104–05 (2002).  The plaintiff then "must file a civil action no more than ninety days after she receives statutory notice of her right to sue from the EEOC."  *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (citing § 2000e-5(f)(1)).

The receipt of a right-to-sue letter is a "condition precedent" that can be cured by subsequent receipt of the letter.  *Gorman*, 753 F.3d at 170 (citing *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982)).  "In pleading conditions precedent," Federal Rule of Civil Procedure 9(c) provides,[15] "it suffices to allege generally that all conditions precedent have occurred or been performed," but "when denying that a condition precedent has occurred or been performed, a party must do so with particularity."  Fed. R. Civ. P. 9(c); *see also Hildebrand v. Allegheny Cnty*., 757 F.3d 99, 112 (3d Cir. 2014) ("Neither *Iqbal* nor *Twombly* purport to alter Rule 9.  We see no indication that those cases sought to override the plain language of Rule 9(c),

---

[14] Section 1981 does not require exhaustion of administrative remedies.  *Jones v. Robinson Prop. Grp., L.P*., 427 F.3d 987, 992 (5th Cir. 2005).  However, the TCHRA, which is modeled after Title VII, does.  *See Gorman v. Verizon Wireless Tex., L.L.C*., 753 F.3d 165, 169 (5th Cir. 2014) ("The TCHRA's exhaustion of remedies requirement is not expressly required by the statute but is inferred by the courts from the statute's structure."); *Hinkley v. Envoy Air, Inc*., 968 F.3d 544, 552 (5th Cir. 2020) (The TCHRA "requires those claiming employment discrimination to file an administrative complaint with the TWC before filing an action in court.").  As related to Supreme Labor's arguments, there is no meaningful difference between the TCHRA and Title VII; so, the Court here addresses the arguments as they pertain to Title VII only.

[15] 5A *Fed. Practice & Procedure*, *supra*, § 1303 (4th ed.) ("Rule 9(c) has been applied outside the contract context.  Most commonly, this has been done with respect to statutory prerequisites to litigation such as exhaustion." (footnote omitted)).

and we therefore conclude that the pleading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*."); *EEOC v. Klinger Elec. Corp.*, 636 F.2d 104, 106 (5th Cir. 1981) ("A general averment that 'all conditions precedent to the institution of this lawsuit have been fulfilled' is quite adequate for pleading purposes." (quoting Fed. R. Civ. P. 9(c))).

Moreover, "[f]ailure to exhaust is an affirmative defense" that a defendant must raise. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom*, *Fort Bend Cnty.*, *Tex.*, *v. Davis*, 139 S. Ct. 1843 (2019).[16]   "And while affirmative defenses, including non-exhaustion, can be appropriately asserted on a [Rule] 12(b)(6) motion, dismissal on such a basis is appropriate only if the defense is evident on the face of the complaint." *Luebano v. Office Depot, L.L.C.*, No. 22-50767, 2023 WL 4249268, at *3 (5th Cir. June 29, 2023) (unpublished) (citing *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006)); *see also Lopez v. Kendall*, No. 22-50411, 2023 WL 2423473, at *1 (5th Cir. Mar. 9, 2023) (unpublished) ("Dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, when the defense appears on the face of the complaint." (cleaned up) (citing *EPCO Carbon Dioxide Prods.*, 467 F.3d at 470, and *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021))).

*Luebano*, *ante*, is illustrative.  There, regarding administrative exhaustion of a claim under the Americans with Disabilities Act ("ADA"), the employee-plaintiff's complaint alleged only the following: "Plaintiff exhausted her administrative remedies by filing with the . . . EEOC[].  In those administrative proceedings, [P]laintiff raised the violations of disability laws

---

[16] *See also Jaso v. Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) ("A plaintiff typically is not required to plead, in the complaint, facts that negate an affirmative defense." (citing, among others, *Jones v. Bock*, 549 U.S. 199, 216 (2007) (Plaintiffs are not required to "specially plead or demonstrate" a response to the affirmative defense of failure to exhaust administrative remedies in a complaint brought under the Prison Litigation Reform Act.))).

she now raises in this complaint. . . . All conditions precedent to jurisdiction have occurred or been complied with."[17]  Because the plaintiff "failed to allege that the EEOC sent her a right-to-sue letter or that the agency had not adjudicated her charge within 180 days," the district court, on a Rule 12(b)(6) motion, dismissed the ADA claim finding that she did not demonstrate on the face of her complaint that she had exhausted her administrative remedies.  *Luebano*, 2023 WL 4249268, at *3.

On appeal, the Fifth Circuit reversed the ADA claim's dismissal.  *Id.* at *5.  It reasoned that the plaintiff's purported failure to exhaust did not appear on the face of her complaint and that, she affirmatively alleged she had exhausted her administrative remedies.  *Id.* at *3.  The panel also observed that "[f]or its part," the employer-defendant "did not attach any documentation supporting the application of exhaustion defenses when it moved for [Rule] 12(b)(6) dismissal[,] [n]or did it move in the alternative for summary judgment based on such evidence." *Id.*  The panel held that the district court erred when it dismissed the ADA claim for lacking exhaustion pleading in her complaint.  *Id.*

Davis's First Amended Complaint alleges far more facts regarding exhaustion than did the complaint in *Luebano*.  It alleges that Davis filed her charges of discrimination and retaliation with the EEOC.  First. Am. Compl. at ¶ 21.  It avers that she complained to the EEOC that her demotion or termination "was due to her race (African American), her gender (female subjected to sexual harassment and hostile work environment)," and that "she opposed the same and thereafter was retaliated against by Defendants by first being demoted, and thereafter being terminated." *Id.* at ¶ 20.  It further asserts that she filed the charges "within the appropriate time of the acts" complained of; "the charges were investigated thereafter by the EEOC"; she "timely

---

[17] Pl.'s Original Compl. & Jury Demand at ¶¶ 4, 6, *Luebano v. Office Depot, LLC*, No. MO:21-CV-233-DC, 2022 WL 20272869 (W.D. Tex. Apr. 7, 2022), ECF No. 9.

files this suit"; and "all conditions precedent to the filing of this action have been fulfilled." *Id.* at ¶¶ 20–23.

Moreover, in her brief in response to the instant motion, Davis asserts that during the administrative process, Supreme Labor received both her EEOC charge and her right-to-sue letter—suggesting that the EEOC indeed issued a right-to-sue letter in connection with her charges against Supreme Labor. Pl.'s Resp. to Supreme Labor's Mot. to Dismiss at 12. In its reply brief, Supreme Labor does not address, much less dispute, that assertion.[18] *See* Def. Supreme Labor's Reply at 6.

The Court finds that Davis's allegations of exhaustion are sufficient to satisfy Rule 9(c)'s general pleading requirement. *See Luebano*, *supra*, 2023 WL 4249268, at *3, *5; *Dobbins v. Fed. Rsrv. Bank of Dallas*, No. 3:20-CV-620-L, 2020 WL 9071686, at *6 (N.D. Tex. Dec. 29, 2020) (holding that Title VII plaintiff's allegation that "all conditions precedent had been met" adequately pleaded that he met the 90-day deadline), *R. & R. adopted*, 2021 WL 1222138 (Mar. 31, 2021). Moreover, as in *Luebano*, *supra*, any failure to exhaust does not appear on the face of the First Amended Complaint. Supreme Labor's motion should be denied on this ground.

## C. Pleading Sufficiency

Davis asserts claims of race and retaliation under the TCHRA, Title VII, and 42 U.S.C. § 1981. She also asserts claims of sex (gender) discrimination and hostile work environment

---

[18] The Court observes that on February 10, 2023, co-defendant Wyoming National submitted a copy of a right-to-sue letter issued by the EEOC as an exhibit to its first motion to dismiss (as it did so later with its second motion to dismiss). Def. Wyoming Nat'l's Mot. to Dismiss Ex. A, ECF No. 7-1. That letter references "Charge No. 453-2022-00090." *Id.* Along with that exhibit, Wyoming National submitted another EEOC document, which, in a header section, references the same charge number as in the right-to-sue letter and identifies Wyoming National as a respondent. *Id.* Ex. B, ECF No. 7-2. The latter exhibit seems to refer to the Charge No. of Davis's EEOC charges filed against Supreme Labor, but the actual number has been redacted. *Id.* The redaction is curious.

sexual harassment under the TCHRA and Title VII.  Race and sex discrimination and retaliation

claims under the TCHRA are governed by the same analysis as that employed for such claims

under Title VII.  *See Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) ("The

Supreme Court of Texas has instructed Texas courts to consult judicial interpretations of Title

VII and follow the approach of the United States Supreme Court in interpreting Title VII when

reviewing TCHRA claims."  (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d

629, 633–34 (Tex. 2012))).  And race discrimination and retaliation claims under § 1981 are

governed by the same analysis as that employed for such claims under Title VII.  *Davis v. Dallas

Area Rapid Transit*, 383 F.3d 309, 316, 319 (5th Cir. 2004).  Consequently, the Court addresses

the pleading sufficiency (or lack thereof) of these claims under the rubrics of Title VII.

As an initial matter, though, the Court observes that for certain claims, Supreme Labor

argues that Davis's First Amended Complaint fails to state a claim because it does not

sufficiently plead one or more prima facie case elements.  *See, e.g.*, Def. Supreme Labor's Mot.

to Dismiss at 4 (listing prima facie case elements); *id.* at 6 (same); *id.* at 7–8 (same).  The prima

facie case of discrimination is a part of the *McDonnell Douglas*[19] framework, which is most

frequently used at the summary judgment stage.  It "is an evidentiary standard, not a pleading

requirement."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).[20]  Although at the

motion to dismiss stage, it can be "helpful to reference" the prima facie case elements, *Chhim v.

Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016), "a plaintiff need not make out a prima

facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss," *Raj v. La.*

---

[19] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[20] *See also Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021) ("*McDonnell Douglas* cannot be dispositive at this stage—[as] it is not guaranteed *McDonnell Douglas* will ultimately apply, as discovery may reveal direct evidence.").

*State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).  Consequently, it is erroneous to require a

plaintiff to allege facts to plausibly "show[] . . . each prong of the prima facie test for disparate

treatment at the pleading stage."  *Id*.  Instead, "a plaintiff need only plausibly allege facts going

to the ultimate elements of [a] claim to survive a motion to dismiss*."  Cicalese v. Univ. of Tex.

Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019).

### 1.  *Claims for Race and Sex Discrimination, and Hostile Work Environment Sexual Harassment*

Title VII prohibits an employer from discharging or otherwise discriminating against an

employee "*because of* [the employee's] *race*, color, religion, *sex*, or national origin."  42 U.S.C.

§ 2000e-2(a)(1) (emphasis added).  "[T]here are two ultimate elements a plaintiff must plead to

support a disparate treatment claim under Title VII: (1) an adverse employment action (2) taken

against a plaintiff *because* of her protected status."  *Cicalese*, 924 F.3d at 767 (internal quotes

omitted).

Supreme Labor argues that Davis does not plead two elements of the prima facie case for

race discrimination: that she was qualified for the position and that she was treated less favorably

than other similarly situated employees.  Def. Supreme Labor's Mot. to Dismiss at 7–8.  But an

allegation of disparate treatment is not the only way to plead that an adverse employment action

was taken "because of" race.  *See Raj*., 714 F.3d at 331 (explaining that a plaintiff must allege

"facts . . . that would suggest [the employer's] actions were based on [the plaintiff's] race . . . *or*

that [the employer] treated similarly situated employees of other races . . . more favorably"

(emphasis added)).

Davis's First Amended Complaint alleges that she is African American.  First Am.

Compl. at ¶ 12.  It avers that Defendants took an adverse employment action when they demoted

her from a leadership position to a youth worker position, when they subsequently terminated

her, and/or when they refused to rehire her. *Id.* ¶¶ 5, 36.[21]  Further, the complaint alleges that Davis's superiors made race-based remarks. *Id.* at ¶ 17.  For example, it alleges, her manager told her that she had an advantage being black, "because if she fell asleep no one would be able to see her in the dark," and her Senior Lead asked her why she wore makeup, as in why she bothered, being that she was Black. *Id.*  It moreover alleges that after she was terminated, Defendants were calling back those employees "who were not African Americans" to return to their positions and rehired them, but not Davis. *Id.* at ¶ 18.

These allegations plausibly suggest that Davis was demoted, terminated, and/or not rehired because of her race. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (concluding, on a summary judgment posture, the allegations that the ADEA plaintiff's superior made ageist comments about "old farts" and that the plaintiff wearing "old man clothes" together with other evidence satisfied his initial burden of establishing a prima facie case of age discrimination); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 289–90 (5th Cir. 2004) (considering, on review of a motion to dismiss a § 1981 claim, the defendant's decisionmaker's use of racial epithet made *after* the alleged adverse action had occurred to conclude that the plaintiff sufficiently pled that "the racial animus is causally connected to the adverse action" and therefore, sufficiently pled "discriminatory intent").  The Court therefore concludes that Supreme Labor's motion should be denied as to Davis's race discrimination claim.

The Court however reaches a different conclusion as to Davis's claims for sex discrimination and hostile work environment sexual harassment.  Other than stating that she is a female, the First Amended Complaint alleges only that "[s]he was also sexually harassed by her

---

[21] *See also Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

Senior Lead and subjected to a hostile work environment in this regard"—a conclusory statement, indeed.  First Am. Compl. at ¶ 17.  It is devoid of any sex-based factual allegations. The Court therefore finds that the sex-based claims should be dismissed.  *See Iqbal*, 556 U.S. at 686, 678 ("[C]onclusory statements without reference to [their] factual context," "an unadorned, the-defendant-unlawfully-harmed-me accusation," and "threadbare recitals of the elements of a cause of action" are insufficient to survive a motion to dismiss.).[22]

### 2.  *Claim for Retaliation*

Title VII also prohibits an employer from retaliating against an employee (1) "*because* [s]he has opposed any practice made an unlawful employment practice by this subchapter," (the so-called "opposition clause") or (2) "*because* [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the so-called "participation clause").  42 U.S.C. § 2000e-3(a) (emphasis added).

To state a plausible claim of retaliation, a plaintiff must plead facts "permit[ting] a reasonable inference of causation," that is, a "causal link between her conduct and the alleged retaliation."  *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433–34 (5th Cir. 2021).[23]  A "causal link" is sufficiently pled where the plaintiff alleges facts that plausibly suggest that "the

---

[22] *See also Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (*per curiam*) (The plaintiff must show "a nexus" between the alleged conduct and "her race or gender."); *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (*per curium*) (finding that the plaintiff's allegations did not sufficiently state a hostile work environment claim because they "do not contain any connection, either explicit or implicit, between her membership in a protected class and the alleged activity"); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) ("Sex-neutral hostile conduct cannot be used to support a hostile environment claim.  Title VII does not protect employees from hostile conduct that is not based on their protected status.").

[23] *See also Luebano*, 2023 WL 4249268, at *5 ("[I]t is enough to survive a Rule 12(b)(6) motion for [the plaintiff] to plead adequate facts that allow us to draw a reasonable . . . inference" of a "causal link" between her FMLA leave and the adverse action.).

employment decision and h[er] protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co*., 238 F.3d 674, 684 (5th Cir. 2001) (internal quotes and citation omitted).

Here, Davis alleges the same adverse employment actions for her retaliation claim as she does for her race discrimination claim.  First Am. Compl. at ¶ 44.  Her First Amended Complaint alleges that Davis "opposed"[24] her superiors' race-based remarks and "thereafter," she was demoted on or about October 19, 2021, and ultimately, terminated on or about October 31, 2021; later, they refused to call her back to return to her position.  *Id.* at ¶ 18.

Supreme Labor argues that the complaint does not allege facts to plausibly show temporal proximity between the alleged protective activities and adverse employment actions. *See* Def. Supreme Labor's Mot. to Dismiss at 9–10.  However, an allegation of temporal proximity is not the only way to plausibly show the requisite causal link.  *See Paul v. Elayn Hunt Corr. Ctr*., 666 F. App'x 342, 348 (5th Cir. 2016) ("Even absent temporal proximity, a plaintiff may still show a causal connection if there is other evidence of retaliation." (internal quotes omitted)); *Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 926 (5th Cir. 2020) ("Williams points to non-temporal evidence that she claims shows retaliatory animus.  The district court erred in refusing to consider this evidence at the prima facie stage.").

The First Amended Complaint alleges that after Davis was terminated, Defendants were calling back those employees "who did not oppose the racial . . . discrimination" to return to their positions, but not Davis who opposed it.  *Id.* at ¶ 18.  The Court thinks that at the pleading stage, this allegation, together with the factual allegations mentioned above, is sufficient to support an inference of retaliatory animus and causal link.  *See Russell v. Cameron Cnty. Sheriff*, No. CV

---

[24] To "oppose," as the term is used in § 2000e-3(a), means "to resist or antagonize; to contend against; to confront; . . . [to] withstand."  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (cleaned up) (citing Webster's New International Dictionary 1710 (2d ed. 1957)).

11-143, 2012 WL 13156262, at *2 (S.D. Tex. June 19, 2012) ("The inferences drawn from a plaintiff's pleaded complaint need not be probable but plausible."); *Virnich v. Vorwald*, 664 F.3d 206, 214 (7th Cir. 2011) ("Although the inference might not be *probable*, it is at least plausible to infer from [the plaintiff]'s allegations that . . . ."); *cf. also Causey*, *supra*, 394 F.3d at 289–90 (considering defendant's conduct *after* the adverse action had occurred to infer discriminatory intent behind the adverse action).

       In sum, while it is a close call, the Court concludes that Davis's First Amended Complaint alleges facts sufficient to "nudge[]" her race discrimination and retaliation claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  After discovery is complete, it may very well be that neither of these claims can survive summary judgment, but on the facts alleged, they survive Supreme Labor's motion to dismiss.[25]

### D.   *Leave to Amend the Complaint*

       The Court recognizes that Supreme Labor's motion is the first motion thus far to challenge the pleading sufficiency of Davis's claims.  The Fifth Circuit has observed:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs *at least one* opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (emphasis added).  The question therefore is whether the Court should *sua sponte* grant Davis

---

[25] *Cf. Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) ("We have only heard one side of the story.  After discovery is complete, the district court may well correctly determine that none of [the plaintiff]'s claims can survive summary judgment. But at the motion to dismiss stage, we are bound to accept his allegations as true.  And on the facts alleged, [the plaintiff] has stated several constitutional claims.").

leave to amend her complaint to cure the deficiencies as to her claims of sex discrimination and hostile work environment sexual harassment—before dismissing them.

The following observations answer that question in the negative.  In response to Wyoming National's first motion to dismiss, which, as Supreme Labor explains, was "based on entirely different grounds than Supreme Labor's [m]otion," Def. Supreme Labor's Reply at 1, Davis requested that she be allowed to proceed with an amended complaint that addresses the arguments Wyoming National raised in its motion, Pl.'s Resp. to Wyoming National's [First] Mot. to Dismiss at 4, ECF No. 8.  However, in response to Supreme Labor's instant motion, Davis makes no such request.  As discussed above, the First Amended Complaint is devoid of any factual matters that could state plausible claims for sex discrimination or hostile work environment sexual harassment.  And nothing in her response brief suggests that she is in possession of unasserted factual matters that could state such claims.

Instead, she seems to request an opportunity to conduct discovery so that she could properly assert such plausible claims.  *See* Pl.'s Resp. to Supreme Labor's Mot. to Dismiss at 14 ("Plaintiff has not been afforded the ability to conduct discovery on her claims in order to develop a full record upon which the Court can decide the issues raised in the motion to dismiss.").  But "a plaintiff must allege facts supporting a plausible claim *before* being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements." *Melendez v. Sirius XM Radio, Inc*., 50 F.4th 294, 307 (2d Cir. 2022) (citing *Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")).  Consequently, the Court finds that leave to amend is unnecessary.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant Supreme Labor Source, LLC's Motion to Dismiss First Amended Complaint (ECF No. 17) be **GRANTED IN PART and DENIED IN PART**.

Specifically, the motion should be **GRANTED** as to Plaintiff Ana Davis's claims for sex/gender discrimination and hostile work environment sexual harassment but be **DENIED** as to her claims for race discrimination and retaliation.  Plaintiff's claims for sex/gender discrimination and hostile work environment sexual harassment should be **DISMISSED**.

**So ORDERED and SIGNED this  10th  day of October 2023.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**