IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ANA DAVIS, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 3:23-cv-00046-KC |
| ) | |
| SUPREME LABOR SOURCE, LLC, ) | |
| d/b/a a/k/a CLARK CONTRACTING, ) | |
| LLC d/b/a a/k/a SERVPRO OF ) | |
| DOUGLAS COUNTY d/b/a a/k/a ) | |
| SERVEPRO INDUSTRIES INC., and ) | |
| WYOMING NATIONAL LOGISTICS; ) | |
| ) | |
|    *Defendants*. ) | |

**DEFENDANT SUPREME LABOR'S PROPOSED UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's Standing Order Regarding Motions for Summary Judgment, Defendant Supreme Labor Source ("Supreme Labor" or "Defendant") submits the following Proposed Undisputed Facts in support of its motion for summary judgment:

1. According to the U.S. Department of Health and Human Services ("HHS"), on March 30, 2021, HHS's Office of Refugee Settlement ("ORR") activated property on Fort Bliss, near El Paso, Texas, to serve as an emergency intake site unaccompanied minor children, who have no lawful immigration status in the United States, and who are apprehended by the U.S. Department of Homeland Security ("Fort Bliss Project"). *See* U.S. Dep't. of Health and Human Servs., Admin. for Children & Families, Office of Refugee Resettlement, ORR Influx Care Facilities for Unaccompanied Children, Fact Sheet, dated 3/22/2024, https://www.acf.hhs.gov/orr/fact-sheet/programs/uc/influx-care-facilities-fact-sheet (last accessed 4/12/2024), attached hereto as **Exhibit 1**.

2. Around mid to late April 2021, Clark Contracting, LLC d/b/a Servpro of Douglas County ("Clark Contracting") began providing custodial disinfection services at Fort Bliss. (*See* **Exhibit 2** hereto, Deposition of Timothy Clark (the "Clark Dep.") at 11:17-19; 12:11-14, 17-25; 15:9-17, 22-25; 16:1-7; 17:25; 18:1).

3. Clark Contracting then engaged Defendant Supreme Labor Source, LLC ("Supreme Labor") to provide custodial cleaning workers to staff the Fort Bliss Project. (Ex. 2 hereto, Clark Dep. 22:20-25; 24: 12-14.; 26:22-24; 60:21-23; **Exhibit 3** hereto, Deposition of Leo Millan (the "L. Millan Dep.") 8:3-5; 18:8-22; 20:11-13; 21:8-14; 55:9-17; Deposition of Jennifer Williams (the "Williams Dep.") 12:4-5, attached hereto as **Exhibit 4**).

4. Supreme Labor is a temporary staffing company that provided labor to Wyoming National for the Fort Bliss project. (Ex. 3, L. Millan Dep. 9:9-11; 51:11-20).

5. Supreme Labor is a minority owned company. (Ex. 3, L. Millan Dep. 64: 7-9).

6. Supreme Labor paid the workers it provided to the Fort Bliss Project. (Ex. 3, L. Millan Dep. 83:17-18; 95:2-10, 19-25; 96:1-8).

7. The Fort Bliss Project was initially designated for a capacity of 5,000 unaccompanied minors. (Ex. 2, Clark Dep. 21:5-6).

8. By early May 2021, the Fort Bliss Project increased to a capacity of 10,000 unaccompanied minors. (Ex. 2, Clark Dep. 21:6-7).

9. Due to this increase, Clark Contracting was engaged to provide youth care services in mid to late May 2021. (Ex. 2, Clark Dep. 21:1-15; 22:20-23; 60:19-20).

10. As a result, Clark Contracting engaged Supreme Labor to provide youth care workers to staff the Fort Bliss site. (Ex. 2, Clark Dep. 22:20-25; 24: 12-14.; 26:22-24; 60:21-23; Ex. 3, L. Millan Dep. 8:3-5; Ex. 4, Williams Dep. 12:5-9).

11. ORR determined the bed capacity for unaccompanied minors that was needed at Fort Bliss. (Ex. 2, Clark Dep. 36:7-19; 52:17-20).

12. The number of workers needed for the Fort Bliss Project largely fluctuated over time, sometimes on a week-by-week basis from approximately 10 to 1,000 workers, depending on the number of unaccompanied minors at the site and government needs. (Ex. 3, L. Millan Dep. 45:25; 46:1-5, 13-21; 61:16-19; Ex. 4, Williams Dep. 58:8-13; SUPREME LABOR 000130-1407, attached hereto as **Exhibit 5**). In or around the middle of June 2021, Fort Bliss's capacity reduced to approximately 5,000 beds for unaccompanied minors. (Ex. 2, Clark Dep. 35:10-17).

13. By mid-July 2021, the capacity reduced to approximately 3,000 beds for unaccompanied minors. (Ex. 2, Clark Dep. 35:17-19).

14. In or around the beginning of July 2021, Tim Clark, the owner of Clark Contracting, which was an independently owned and operated franchise of Servpro Industries, LLC left the franchise system. (Ex. 2, Clark Dep. 41:23-25; 42:1, 3-9).

15. Defendant Wyoming National Logistics, LLC ("WY National"), in turn, took over for Clark Contracting at Fort Bliss. (Ex. 2, Clark Dep. 41:23-25; 42:1; 45:6-11; 46:13-22; 59:17-21).

16. WY National entered into a subcontractor agreement with Supreme Labor, dated July 6, 2021, regarding Supreme Labor's provision of workers at Fort Bliss. (Ex. 2, Clark Dep. 59:5-25; Ex. 2 to Clark Dep. at WYN0000074-78, attached hereto as **Exhibit 6**; Ex. 3, L. Millan Dep. 8:3-5; 47:2-6; 54:18-25; 55:1-8, 22-25; Ex. 3 to L. Millan Dep. at WYN0000074-78).

17. When a reduction in workers was needed due to a decrease in the number of unaccompanied minors at the Fort Bliss Project, workers were selected for dismissal based on attendance, job performance, and the type of position(s) needed at the time. (Ex. 3, L. Millan Dep.

61:20-25; 62:3-5; Ex. 2, Clark Dep. 83:18-25; 84:1-25; 96:9-17; 103:3-8; 125:12-18; Ex. 2 to Clark Dep. at WYN0000644-645, attached hereto as **Exhibit 7**).

18.     On or about May 24, 2021, Plaintiff Ana Davis began working as a Youth Care Worker ("YCW") at Fort Bliss Project. (Deposition of Ana Davis (the "Davis Dep.") 27:13-22, 42:9-11, 59:18-23, attached hereto as **Exhibit 8**; Ex. 2 to Davis Dep. Answer to Interrogatory No. 2, attached hereto as **Exhibit 9**).

19.     Plaintiff identifies with the following races: Black and Hispanic. (Ex. 8, Davis Dep. 11:9-16).

20.     Beto Millan did not know Plaintiff's race. (Deposition of Eberto Millan (the "E. Millan Dep.") 46:1-25, attached hereto as **Exhibit 10**).

21.     YCWs were responsible for caring for the unaccompanied minors at the Fort Bliss site. (Ex. 8, Davis Dep. 62:16-23, 63:5-17; Ex. 5 to Davis Dep. at Supreme Labor 1-2, attached here to as **Exhibit 11**; Ex. 10, E. Millan Dep. 14:21-23).

22.     In addition to YCWs, positions at the Fort Bliss Project included Lead YCWs, Senior Lead YCWs, Assistant Project Managers, and Project Managers. (Ex. 10E. Millan Dep. 11:14-18; 12:10-11; 13:1-2).

23.     Lead YCWs were responsible for ensuring all YCWs were performing their job duties. (Ex. 11 hereto, Ex. 5 to Davis Dep. at Supreme Labor 1-2; Ex. 3, L. Millan Dep. 75:12-16; Ex. 4, Williams Dep. 28:6-11; Ex. 10, E. Millan Dep. 14:24-25; 15:1).

24.     Senior Lead YCWs were responsible for ensuring that all Lead YCWs and YCWs were performing their job duties. (Ex. 11 hereto, Ex. 5 to Davis Dep. at Supreme Labor 1-2.; Ex.3, L. Millan Dep. 76:7-8; Ex. 4, Williams Dep. 28:6-11; Ex. 10, E. Millan Dep. 15:1-3).

25.     Each position wore different color shirts. YCWs wore yellow shirts, Lead YCWs wore green shirts, and Senior Lead YCWs wore blue shirts. (Ex. 8, Davis Dep. 41:21-23).

26. In addition to these positions, Assistant Project Managers and Project Managers were on site at the Fort Bliss Project. (Ex. 10, E. Millan Dep. 11:14-18).

27. Supreme Labor employed the Assistant Project Managers, including Eberto ("Beto") Millan and Uriel Castaneda, to supervise YCW, YCL, and SLs for the Fort Bliss Project. (Ex. 3, L. Millan Dep. 47:24-25; 48:1-19; 56:7-11; 57:20-22; 58:17-20; 60:13-14; 76:16-22; 93:16-21; Ex. 4, Williams Dep. 25:11-13; 44:9-11; Ex. 10, E. Millan Dep.11:14-12:13; Deposition of Uriel Castaneda (the "Castaneda Dep."), attached hereto as **Exhibit 12**, 10:2-4; 12:10-18; 14:8-12; 14:21-15:9; 22:2-5, 13-19).

28. Wyoming National employed the Project Managers who were on site for the Fort Bliss Project, including Colin Tenneson, Leonard Gillis, and Rudy. (Deposition of Nicholas Cross (the "N. Cross Dep.") 14:18-15:4, attached hereto as **Exhibit 13**; Ex. 13, N. Cross Dep. 68:23-69:4; 76:7-8; 16:1-4)

29. Project Managers oversaw the Assistant Project Managers. (Ex. 10, E. Millan Dep. 11:14-18; Ex. 12, Castaneda Dep. 41:9-11).

30. Project Managers had the authority to fire and demote. (Ex. 10, E. Millan Dep. 19:11-17).

31. Wyoming approved Supreme Labor's decisions regarding various items for the Fort Bliss Project. (Ex. 11, Castaneda Dep. 17:24-18:13; 18:18-20: 41:17-18).

32. Wyoming would communicate with Supreme Labor regarding the number of workers needed and would provide a list of individuals to hire from. (Ex. 11, Castaneda Dep. 26:13-27:11; Ex. 10, E. Millan 20:17-21:21).

33. Supreme Labor did not have any ability to add or remove people from these lists. (Ex. 11, Castaneda Dep. 27:2-20; Ex. 10, E. Millan Dep. 20:17-21:21; Ex. 4, Williams Dep. 56:2-7; 63:9-15; Ex. 2, Clark Dep. 83:13-23; 89:17-21).

NSH 2804123.3

34. All workers at Fort Bliss, including Plaintiff, received a Code of Conduct from Wyoming and were expected to comply with it. (Ex. 8, Davis Dep. 132:4-15; Ex. 8 to Davis Dep. at WY 56-78, attached hereto as **Exhibit 14**; Ex. 2, Clark Dep. 107:23-25; 108: 2-25; 109:1-11; Ex. 13, N. Cross Dep. 73:2-12; 74:2-12; Ex. 2 to Clark Dep. at WYN0000056-73, attached hereto as **Exhibit 15**).

35. The Code of Conduct required all workers to report "any violation of the Code by another worker." (Ex. 15 hereto (Ex. 2 to Clark Dep. At WYN0000058)).

36. The Code of Conduct prohibited harassment and discrimination. (Ex. 15 hereto, Ex. 2 to Clark Dep. at WYN0000060, 65-66).

37. Supreme Labor has a zero-tolerance policy on discrimination. (Ex. 3, L. Millan Dep. 64: 4-5).

38. Around July 2021, Senior Lead YCW Jazmine Ortiz asked Plaintiff if she wanted to be a Lead YCW. (Ex. 8, Davis Dep. 43:10-12, 70:2-10, 22-24, 71:1-2).

39. Plaintiff initially declined Ms. Ortiz's offer, but then later agreed and was promoted from YCW to Lead YCW around July 2021. (Ex. 8, Davis Dep. 69:15-24, 70:1-24, 71:1-16).

40. On or about September 2, 2021, Plaintiff requested to be transferred back to a YCW position. (Ex. 6 to Davis Dep. at AD 00041, attached hereto as **Exhibit 16**; Ex. 8, Davis Dep. 91:5-13).

41. Plaintiff did not state that she wanted to transfer due to race or sex-based comments allegedly being made. (Ex. 8, Davis Dep. 102:9-24, 103:1).

42. Plaintiff's request was denied. (Ex. 6 to Davis Dep, attached as Ex. 16).

43. On or around October 21, 2021, Plaintiff reported to Leonard Gillis (Black), Project Manager for Wyoming National, that a Senior Lead YCW, Lina Arteada, had made what Plaintiff believed to be two race-based comments toward her. (Ex. 13 to Davis Dep., attached hereto as

**Exhibit 17**; Ex. 8, Davis Dep. 81:3-7, 83:8-24, 84:1-2, 88:13-18; 94:20-21; 95:20-21; 101:6-24; 146:10-24; 148:2-22).

44. Plaintiff states that "[S]he was making that way before, like, around July, she would be making these comments." (Ex. 8, Davis Dep. 110:3-5).

45. Ms. Arteada allegedly told Plaintiff: (a) "[Y]ou…have an advantage in being black because if [you] fell asleep, [we] wouldn't be able to tell cause it was dark," and (b) "[Y]ou don't have to worry about [pimples and stuff like that]…because your skin color, you really can't see them like me…I don't even know why you wear makeup…[I]f I was your skin color, I wouldn't even bother wearing makeup." (Ex. 8, Davis Dep. 81:3-7 (*see also* Davis Errata Sheet); 83:8-24; 84:1-2).

46. On or about October 20 or 21, 2021, Senior Lead YCW Jazmine Ortiz informed Beto Millan, Assistant Project Manager for Supreme Labor, that Plaintiff was feeling uncomfortable with Ms. Arteada and that Ms. Arteada had commented to Plaintiff that if she fell asleep in the dorm, no one would notice because of her skin color. (Ex. 10, E. Millan Dep. 32:3-17; Ex. 1 to L. Millan Dep. at SUPREME LABOR 001412, attached hereto as **Exhibit 18**).

47. Ms. Ortiz reported to Beto Millan that Plaintiff did not want to report Ms. Arteada. (Ex. 18 hereto, Ex. 1 to L. Millan Dep. at SUPREME LABOR 001412).

48. After speaking with Ms. Ortiz, Beto Millan still spoke with Plaintiff about Ms. Arteada's comments. (Ex. 10 hereto, E. Millan Dep. 24:8-22; Ex. 18 hereto, Ex. 1 to L. Millan Dep. at SUPREME LABOR 001412).

49. After speaking with Plaintiff, Beto Millan spoke with Ms. Arteada directly. Ms. Arteada admitted to saying that no one would notice Plaintiff if she were sleeping because of her skin color, or something to that effect. (Ex. 10 hereto, E. Millan Dep. 28:24-25; 29:1-20; Ex. 18 hereto, Ex. 1 to L. Millan Dep. at SUPREME LABOR 001412).

NSH 2804123.3

50. Ms. Arteada told Beto Millan that she did not mean the comments "in a bad way," or words to that effect. (Ex. 18 hereto, Ex. 1 to L. Millan Dep. at SUPREME LABOR 001412).

51. Beto Millan walked Ms. Arteada off the Fort Bliss site that evening due to her comments toward Plaintiff. (Ex. 10, E. Millan Dep. 35:19-24).

52. After Beto Millan met with Ms. Arteada, he immediately informed Mr. Gillis and Colin Tenneson, another Project Manager for WY National, of his conversation with her. (Ex. 10, E. Millan Dep. 30:10-25; 31:1-2).

53. Thereafter, Mr. Gillis informed Plaintiff that Mr. Tenneson would be coming to speak with her. (Ex. 13 to Davis Dep, attached hereto as Ex. 17).

54. On or about October 21, 2021, Beto Millan and Mr. Tenneson met with Plaintiff to further discuss her complaint against Ms. Arteada. (Ex. 8, Davis Dep. 135:12-24, 136:1-5, 160:17-19; *see also* C. Tenneson Declaration attached to Wyoming National's Motion for Summary Judgment (hereinafter "Wyoming's Motion")).

55. Mr. Tenneson then asked Plaintiff to prepare a written statement with the details of her complaint against Ms. Arteada, which Plaintiff provided. (Ex. 11 to Davis Dep., attached hereto as **Exhibit 19**; Ex. 8, Davis Dep. 105:21-24, 106:1-3, 15-23, 135:4-11, 136:15-19, 137:16-18, 160:20-23).

56. Following this meeting, Beto Millan asked Plaintiff if she still wanted to transfer from a Lead YCW to a YCW, which Plaintiff had previously requested in September 2021. (Ex. 8, Davis Dep. 91:5-19, 92:11-21, 157:12-13, 225:12-18; 240:19-24; 241:1-17).

57. Plaintiff told Beto Millan "okay" and she was subsequently moved into a YCW position. (Ex. 8, Davis Dep. 92:11-21, 225:12-18; 241:18-20, 242:3-4).

NSH 2804123.3

58. Ms. Arteada was demoted from Senior Lead YCW to YCW due to her alleged conduct toward Plaintiff. (C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex, A thereto; Ex. 10, E. Millan Dep. 24:22-25; 25:1-4).

59. Ms. Arteada was informed that she would be required to undergo retraining. (C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto).

60. Ms. Arteada never returned to work at Fort Bliss following her discussion with Beto Millan regarding this. (Ex. 10, E. Millan Dep. 35:19-24).

61. Ms. Arteada subsequently resigned her employment, and Mr. Tenneson informed Plaintiff of that fact. (C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto; Ex. 8, Davis Dep. 106:11-14, 108:11-14, 136:10-11).

62. Workers in dorm Bravo, including Plaintiff, were subsequently reassigned to different dorms. (Ex. 8, Davis Dep. 48:7-24, 107:3-14; WYN 0000707; C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto).

63. Plaintiff was given the option to select a new dorm of her choosing and she selected dorm 10. (Ex. 8, Davis Dep. 48:17-24, 49:1-8, 107:16-20, 139:15-24, 161:17-21; C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto).

64. On October 25, 2021, Mr. Tenneson prepared a Grievance/IR Response Report (the "Grievance Report"). (C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto).

65. The Grievance Report specifically states that as a result of "[r]acial comments from [Senior Lead] to [Youth Care Lead]" and "[t]ension in [the] Dorm," the following action was taken:

> "SL was demoted from SL to YCW and was going to be retrained. She decided to step away from job instead. New SL's [sic] were placed in dorm and YCW's [sic] from both 'cliques' were placed in separate dorms. Action was taken immediately once management was made aware. Ana Davis was given a Yellow Shirt per her request and was sent to a form of her choosing. She chose dorm 10."

9

(C. Tenneson Decl. attached to Wyoming's Motion as Ex. 19 and Ex. A thereto).

66. On or about October 26, 2021, Wyoming determined that the number of workers at Fort Bliss would need to be reduced to 126 total workers per shift due to government needs. This would be broken down as follows: 83 YCWs, 36 Lead YCWs, and Senior Lead YCWs. (Ex. 2, Clark Dep. 122:16-25; 123:3-16; 125:12-15; Ex. 7 hereto (Ex. 2 to Clark Dep. at WYN0000644-645)).

67. Workers who had poor attendance would be laid off first and those in the Senior Lead YCW position would be prioritized. (Ex. 2, Clark Dep. 125:12-15; ; Ex. 7 hereto (Ex. 2 to Clark Dep. at WYN0000644-645)).

68. According to Wyoming's records, between August 29, 2021 and October 23, 2021, Plaintiff was absent from work at the Fort Bliss site eight times, including one no show, and she left work early on two separate occasions. (*See* N. Cross Declaration, attached as Ex. 21 to Wyoming Motion for Summary Judg. and Ex. A thereto (WYN0001589, tab 2, ln. 31)).

69. On October 30, 2021, over 200 youth care workers, including Plaintiff, were laid off from the Fort Bliss Project due to a reduction in unaccompanied minors resulting in a decrease in the need for staffing. (*See* Supreme Labor 000130-146 compared to Supreme Labor 147-158, attached as Ex. 5 hereto; Ex. 8, Davis Dep. 231:16-17). The majority of these workers were Hispanic. (N. Cross Dec., attached to Wyoming Motion as Ex. 21).

70. On November 10, 2021, approximately five youth care workers, including Yordanska Pena, were laid off from the Fort Bliss Project. (N. Cross Dec., attached to Wyoming Motion as Ex. 21 and Ex. C thereto).

71. On November 13, 2021, approximately three youth care workers, including Nancy Perez, were laid off from the Fort Bliss Project. (N. Cross Dec., attached to Wyoming Motion as Ex. 21 and Ex. C thereto).

72. YCWs with poor attendance were not recalled to Fort Bliss immediately or sometimes ever because the needs of supervision of the unaccompanied minors demand reliable attendance. (Ex. 2, Clark Dep. 96:8-15).

73. Plaintiff was not recalled to the Fort Bliss Project. (Ex. 8, Davis Dep. 127:19-20).

74. In addition to Plaintiff, at least 74 other individuals were not recalled to the Fort Bliss Project between the October 30, 2021 reductions in force Plaintiff was subject to and December 2022. (B. Vanhooser Decl. at ¶5 and Ex. B thereto, attached hereto as **Exhibit 20**).

75. Beginning in approximately mid-June 2023, there were no more unaccompanied minors at Fort Bliss, and Wyoming only provided management services to the site. (Clark Dep. 35:3-9).

76. Supreme Labor stopped providing services at Fort Bliss entirely on or about September 20, 2023. (Ex. 2, Clark Dep. 35:3-4).

77. On April 26, 2022, Plaintiff filed a charge of discrimination against Supreme Labor with the Equal Employment Opportunity Commission, Charge No. 453-2022-00732 (the "Charge"). (SUPREME LABOR 000053, attached hereto as **Exhibit 21**).

Respectfully submitted,

*/s/  Bethany Vanhooser*
Samuel L. Jackson (BPR No. 021548)
(admitted *pro hac vice*)
Bethany Vanhooser (BPR No. 038594)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
(615) 238-6300 Phone
(615) 238-6301 Facsimile
sjackson@spencerfane.com
bvanhooser@spencerfane.com

DeAndrea C. Washington
Texas Bar No. 24070814
Federal I.D. No. 1057772
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
(713) 552-1234 [Telephone]
(713) 963-0859 [Facsimile]
dwashington@spencerfane.com

*Counsel for Defendant Supreme Labor Labor*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the forgoing has been served via the Court's electronic filing system on April 12, 2024:

Soraya Yanar Hanshew, Esq.
The Hanshew Law Firm, PLLC
632 Moondale Dr.
El Paso, Texas 79912
syhlaw@outlook.com
(915) 491-6181 Telephone
(915) 996-9907 Facsimile

*Attorney for Plaintiff*

Jill K. Bigler
Chris T. Page McGinnis
Ohio Bar No. 0099165
Epstein Becker & Green, P.C.
250 West Street, Suite 300
Columbus, Ohio 43215
jbigler@ebglaw.com
ctpage@ebglaw.com

Greta Ravitsky
Epstein Becker & Green, P.C.
700 Louisiana Street, Suite 3950
Houston, Texas 77002
gravitsky@ebglaw.com

*Attorneys for Defendant*
*Wyoming National Logistics*

                                      */s/ Bethany Vanhooser*

NSH 2804123.3